IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL FULLER,

    Plaintiff,

v.                                                        CV 14-883 WPL/GBW

FINLEY RESOURCES, INC., and
MARTIN GALINDO,

    Defendants.

**ORDER ON *DAUBERT* MOTIONS TO EXCLUDE TESTIMONY**

Michael Fuller has sued Martin Galindo and his employer, Finley Resources, Inc., for injuries he sustained in an automobile accident that occurred on April 1, 2014. Fuller claims that while he was driving a tractor-trailer, Galindo turned left in front of him. Fuller's truck collided with Galindo's pick-up truck, jackknifed, and his tractor caught on fire. Fuller sustained personal injuries as a result of the accident, including burns that covered approximately 7% of his body surface. In addition to the physical injuries, Fuller claims to suffer from post-traumatic stress disorder (PTSD) as a result of the accident. Fuller plans to call his psychologist, Dr. Norman Shulman, to testify concerning his claim for PTSD. Fuller has also retained an economist, William Patterson, to testify to his economic damages as a result of the accident.

With the trial date approaching, the parties have filed a number of motions. Galindo and Finley Resources (collectively "Defendants") have filed a motion to exclude expert testimony from Patterson, Fuller's economist. (Doc. 119.) Fuller has filed a motion to exclude expert testimony from the Defendants' expert witnesses: Dr. Rose, a psychologist, Dr. Radecki, a physician, and Dr. Rhodes, an economist. (Doc. 121).

Under *Daubert* and Federal Rule of Evidence 702, judges must serve as gatekeepers to keep scientific and other expert testimony that is not reliable and relevant out of the courtroom. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596-97 (1993). For expert testimony to be admissible, the judge must ensure that the expert is sufficiently qualified to give the opinion, the expert's methodology must be sufficiently reliable, and the testimony must assist the trier of fact to understand an issue in the case. *Id*. In *Kumho Tire*, the Supreme Court made clear that the *Daubert* framework applies not only to scientific testimony, but to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Because "there are many different kinds of experts, and many kinds of expertise," the *Daubert* factors are not a definitive checklist or test and some factors may not be pertinent to assessing the reliability of non-scientific experts. *Id*. at 150; *see generally* William P. Lynch, *Doctoring the Testimony: Treating Physicians, Rule 26, and the Challenges of Causation Testimony*, 33 REV. LITIG. 249, 301-09 (2014).

When considering *Daubert* challenges to expert testimony, courts must be careful to maintain the proper balance between the court's role as gatekeeper and the jury's role as the ultimate fact finder. *McDowell v. Brown*, 392 F.3d 1283, 1299-1300 (11th Cir. 2004). To present expert testimony to the jury, a party must show that the methods employed by his experts in reaching their conclusions are based on reliable methodologies and that their opinions are based on facts sufficiently tied to the case. *Dodge v. Cotter Corp*., 328 F.3d 1212, 1222 (10th Cir. 2003). When expert testimony meets the *Daubert* standard, the expert may testify and the jury decides how much weight, if any, to give that testimony. *Zuchowicz v. United States*, 140 F.3d 381, 387 (2d Cir. 1998).

The Defendants argue that Patterson's testimony about hedonic damages and Fuller's other economic losses lacks foundation and is speculative. Although Patterson initially intended

to testify concerning specific amounts of money for hedonic damages, including the use of benchmarks and the value of a statistical life, Fuller withdrew that testimony in his response to the Defendants' motion. Thus, at issue is whether Patterson can testify more generally concerning the concept of hedonic damages and the general method for calculating them, and to Fuller's lost earning capacity, lost household services and future medical expenses.

New Mexico allows an injured party to recover hedonic damages. NM UJI 13-807A. The concept of hedonic damages is premised on "the rather noncontroversial assumption that the value of an individual's life exceeds the sum of that individual's economic productivity." *Smith v. Ingersoll-Rand Co.,* 214 F.3d 1235, 1244 (10th Cir. 2000). The Tenth Circuit and numerous cases from this District have excluded expert testimony on hedonic damages from an economist who attempts to testify to a specific dollar figure, benchmark figures or a range of values to be used in calculating such damages, but have allowed testimony about the concept of hedonic damages and the broad areas of human experience the jury should consider in determining those damages. *Smith*, 214 F.3d at 1245-56; *Kretek v. Bd. of Comm'rs of Luna Cty.*, No. 11cv676 KG/GBW, Doc. 322 at 3 (D.N.M. Feb. 26, 2014) (unpublished); *Flowers v. Lea Power Partners, LLC*, No. 09cv569 JAP/SMV, 2012 WL 1795081, at *4 (D.N.M. Apr. 2, 2012) (unpublished); *BNSF Ry. Co. v. LaFarge Sw., Inc.*, No. 06cv1076 MCA/LFG, 2009 WL 4279849, at *1 (D.N.M. Feb. 9, 2009) (unpublished). I will follow this well-established law and will allow Patterson to testify about the concept of hedonic damages and the general method for calculating them within the parameters set out in the cases.

The Defendants raise a number of objections to Patterson's testimony about the other economic losses Fuller has suffered as a result of the accident. They contend that 1) Patterson did not use Fuller's earnings history but based his future lost earning capacity on earnings of an

3

average truck driver in New Mexico; 2) he provided no explanation for assuming Fuller would have received an additional 15% in fringe benefits; 3) he has no support for loss of earnings figures for Fuller working to age 67 or 78; and 4) he has no support for his opinions about lost household services and future medical expenses.

These objections go to the weight and not to the admissibility of Patterson's testimony. The Defendants only substantial challenge is to Patterson's use of the earnings of average truck drivers in New Mexico to compute lost earning capacity. Clearly, Patterson could have used Fuller's own wages as the starting point for his calculations. But this omission does not justify the exclusion of this testimony, because an expert may testify to general principles relevant to the case without applying the principles to the specific facts of the case. *See* Fed. R. Evid. 702, 2000 Advisory Comm. Note ("[I]t might . . . be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case"); *see also United States v. Brinson*, 772 F.3d 1314, 1319-20 (10th Cir. 2014) (citing the 2000 Advisory Committee Note and holding that the district court did not abuse its discretion by permitting an expert that "was not familiar with the facts in the case" to testify "about characteristics of the prostitution trade" because his testimony was sufficiently reliable and "could have proven helpful" to the jury); *see also Proctor & Gamble Co. v. Haugen*, No. 95cv94 TS, 2007 WL 750435, at *1-2 (D. Utah Mar. 7, 2007) (unpublished) (citing the 2000 Advisory Committee Note and permitting an expert "in the field of psychology and rumors" to testify in lawsuit against competing distributors for statutory violations and business interference torts because expert's testimony was reliable and "would be helpful to educate the jury as to the general principles of rumor dynamics.")

Fuller has filed a motion to exclude or limit the testimony of the Defendants' experts. Fuller does not question the qualifications of Dr. Rose, the Defendants' psychologist, but argues that Dr. Rose lacks reliable facts or data for her opinions and fails to apply reliable principles and methods to the case. As Dr. Rose makes clear in her report, because she did not examine Fuller and do psychological and cognitive testing, she cannot make statements specific to his status. Dr. Rose reviewed Fuller's medical records and can testify regarding the general methods and principles related to the diagnosis and treatment of PTSD and explain how Fuller's psychologist, Dr. Shulman, did not properly apply these methods and principles. Dr. Rose may testify to purported deficiencies in Dr. Shulman's approach, such as giving Fuller a PTSD checklist or not adequately evaluating Fuller's pre-morbid history. Fuller, or more accurately, his lawyers, fail to recognize that *Daubert* and Rule 702 are not "intended to provide an excuse for an automatic challenge to the testimony of every expert." 2000 Advisory Comm. Note to Rule 702. Fuller's lawyers either misunderstand the role of Dr. Rose's testimony or the purpose of a *Daubert* challenge to expert testimony.

Fuller raises a number of challenges to the testimony of Dr. Radecki, who specializes in physical medicine and rehabilitation. Based on his review of Fuller's medical records, Dr. Radecki has concluded that Fuller is physically capable of returning to work, and Fuller does not challenge that testimony. Dr. Radecki also proposes to testify that Fuller's ability to work is medically intact, which includes consideration of Fuller's claim that he is suffering from PTSD. Fuller's main argument is that Dr. Radecki is not qualified to testify concerning PTSD.

Fuller emphasizes that Dr. Radecki testified that he is not an expert on PTSD, and that he cannot say whether or not Fuller has PTSD. However, Dr. Radecki also testified that psychological well-being is one of the most important aspects of rehabilitation in many cases,

and that assessing psychological stressors is integral to the care of his patients. Dr. Radecki often works as part of a team with psychologists and neuropsychologists to care for seriously injured patients. The Defendants cite *In re Wright Med. Tech. Inc., Conserve Hip Implant Prods. Liab. Litig.*, --- F.Supp.3d ---, ---, No. 13cv297 WSD, 2015 WL 5117896 (N.D. Ga. Aug. 31, 2015), to argue that Dr. Radecki relied in part on the expertise of Dr. Rose in reaching his conclusions, and that experts may rely upon opinions and findings of other experts so long as such information is regularly relied upon by experts in that field. Yet, Dr. Radecki did not rely upon the opinions or findings of Dr. Rose when he formed his opinions in this case. In his report, Dr. Radecki recommended that Fuller be assessed for PTSD, and the Defendants later hired Dr. Rose to review Fuller's records and give her opinions on this issue.

    I will limit Dr. Radecki to testifying to the opinions contained in his report: that he noted inconsistencies in Fuller's presentation of PTSD symptoms after the injury and deficiencies in Dr. Shulman's diagnosis, and that he recommended a psychological assessment of Fuller for PTSD symptoms. Further testimony about PTSD must be presented through Dr. Rose.

    Fuller's challenge to the testimony of the Defendants' economist, Dr. Rhodes, on loss of earning capacity and hedonic damages is meritless and does not warrant extended discussion. Since I have precluded William Patterson from quantifying an amount for hedonic damages, Dr. Rhodes will not have to rebut that testimony. As with the challenge to Dr. Rose's testimony, Fuller's lawyers have transmuted material for cross-examination into a *Daubert* challenge, and the attempt is no more persuasive this time.

    The Defendants' motion to exclude testimony from William Patterson is granted in part and denied in part. Patterson will not be allowed to testify to specific amounts or a range of values for hedonic damages, but he may testify generally about the concept of hedonic damages

and the other economic losses sustained by Fuller. Fuller's motion to exclude testimony from Dr. Rose is denied; his motion to exclude testimony from Dr. Radecki is granted in part to limit Dr. Radecki to testifying to only those opinions found in his report; and his motion to exclude testimony from Dr. Rhodes is denied.

    IT IS SO ORDERED.

*William P. Lynch* (signature)
William P. Lynch
United States Magistrate Judge